UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA

v.

[2] ROBERT HOUSTON MCDOWELL

Case No. 3:24-cr-00121

CHIEF JUDGE CAMPBELL

**Defendant Houston McDowell's Motion to Compel
Production of Exculpatory Evidence**

Both exculpatory evidence and impeachment evidence must be produced in such time that they can be used effectively at trial. But because the character of these different types of evidence—and the time needed to make effective use of them—differs, so too does the required timing of disclosure. Exculpatory evidence must be produced promptly upon discovery, while impeachment evidence merely needs to be produced a reasonable time before trial.

In this case, the government conflates these two types of evidence, the effect of which is to delay producing exculpatory evidence and, in turn, sidestep controlling precedent, the local rules, and this Court's earlier *Brady* order. All those authorities recognize the distinction between exculpatory and impeachment evidence and confirm that exculpatory evidence must be produced promptly upon discovery. The *Brady* order is particularly clear: the government must "disclose evidence favorable to the defendant and material to the defendant's guilt or punishment" and do so "in a timely

1

manner." (D.E. #19.)

But here the government has not done that—or at least is not willing to say so—and it ignores the exculpatory-impeachment evidence distinction. Instead, the government has produced a partial, anonymized summary email. It also declined the defense's further requests—for more details, for additional materials, and for confirmation that it met the scope and substance of its *Brady* obligations. Most inexplicably, it also declined the defense's request that it follow the same practical approach it recently followed in a similar healthcare-fraud case in this district. That approach, routinely followed in districts across the country, avoids these issues altogether by simply allowing counsel to review interview memoranda and grand-jury transcripts.

The question before the Court is whether the government's approach meets its obligations under the Court's order, the local rules, and *Brady*. The answer is no: the government's blanket refusal to confirm it has searched in identified areas for specific categories of materials, leaves the defense—and ultimately, the Court—with no assurance that government has met its obligations. And for the limited information the government did disclose, the government's approach does not provide the details to allow a defendant to make effective use of the information

Because of these shortcomings, the Court should grant this motion and order the government to (1) provide all required information under the Court's prior order, the local rules, and *Brady* and its progeny within ten days, (2) confirm that it has done so after searching in the specific locations and for the specific types of evidence listed in the defense's February 20, 2025 letter (described below), and (3) provide

2

details to supplement its inadequate disclosure in its February 18, 2025 summary.

I. BACKGROUND

A. This case

This case arises from a 23-count indictment charging several offenses, including conspiracy, 18 U.S.C. § 371, healthcare fraud, 18 U.S.C. § 1347, healthcare-fraud conspiracy, 18 U.S.C. § 1349, and violations of the Antikickback Statute, 42 U.S.C. § 1320a-7b(b)(1)(A) & (b)(2)(A). It names two defendants: Robert Houston McDowell and James Brandon Washburn.

The government has made several productions of voluminous discovery to date and has reported that the expected final production will be forthcoming shortly. In addition, two cell phones have been made available for inspection.

On February 21, the Court accepted Washburn's plea petition. (DE #47.) McDowell's trial is currently scheduled to begin on August 12, 2025.

B. The defense's attempts to resolve this dispute

The defense made several attempts to resolve this dispute, and the parties exchanged views over the course of several weeks, including:

- **The January 21, 2025 defense letter.** On January 21, the defense wrote a letter noting the absence of any *Brady* disclosures to date and requested a call to discuss that and other issues. It referenced the Court's June 25, 2024 order requiring such disclosures be made in a timely manner and requested access to interview memoranda, transcripts, etc., as had been provided by the same prosecution team in a case involving similar charges, *United States v. Alshalabi, et al.*, No. 3:21-cr-00171 (M.D. Tenn.).

- **The January 24, 2025 government response.** On January 24, the government responded that, "[a]t this juncture, we are not producing reports of interview or grand jury testimony (to the extent it exists). We are aware of our obligations pursuant to Brady and its progeny. Although the Jencks Act and *United States v. Bencs* controls, we will review our reports of

3

Case 3:24-cr-00121   Document 51   Filed 03/24/25   Page 3 of 13 PageID #: 224

interview again in the next week or so, and if there is content that needs to be disclosed, we will do so in a summary letter."

- **The February 18, 2025 "summary letter."** Despite the defense's skepticism—and courts' disfavor—of "summary letters," the defense waited to evaluate the forthcoming information from the government. That information came several weeks later in a February 18 email. The "summary" portion of the email stated, in full, the following:

> A witness stated the following in sum and substance:
>
> McDowell was a "big picture guy" and tried to expand the business into wound care and other products. The Witness and McDowell likely only spoke twice about bracing. McDowell was not as involved with the bracing marketers as Washburn was.
>
> McDowell was not as involved in the DME business and was trying to build up the CGM business.
>
> A witness stated the following in sum and substance:
>
> The Witness's main point of contact was Brady Washburn, but the Witness did speak with McDowell some.
>
> A witness stated the following in sum and substance:
>
> Reps for Limitless received a percentage of all insurance receivables. That was how Washburn and McDowell were paid. Reps were paid on what was reimbursed by insurance and not on the number of samples submitted.
>
> The 4/27/21 email that changed the terms of the sales contracts went to all reps and downlines. Reps were told that month they would receive a flat monthly fee regardless of the volume they sent to Limitless. Limitless planned to move forward with only 3 – 5 existing sales reps and bring them inhouse as direct employees. Washburn and McDowell were not retained.
>
> The flat fee model meant payments to the reps were not based on volume. The Witness did not recall any conversations about backing into or disguising payments that actually were based on volume. The Witness wasn't with Limitless for long after the announcement in the change in fee structure. The Witness left in May 2021. Most sales reps didn't stick around much longer either. The Witness was gone by the time the sales reps were brought inhouse and paid the flat fee.

- **The defense's February 20, 2025 detailed request.** Because this summary response was plainly deficient, on February 20 defense counsel sent a detailed response. *See* 2/20/25 Letter **(Exhibit 1)**. That response cited authorities that criticized using "summary letters" as a means of providing discovery. *Id*. at 3-4. It also detailed the reasons why *United States v. Bencs*, 28 F.3d 555 (6th Cir. 1994), the authority relied on by the government to avoid disclosure of the requested material, did not support that approach. Exhibit 1 at 4-5. In addition, in an effort to break the impasse and facilitate

4

the government's production of exculpatory evidence, defense counsel identified 22 categories of information. *See id*. at 5-7.

- **The defense's March 4, 2025 follow-up letter.** When no response was received to the February 20 letter, the defense followed up on March 4, sending another letter, again in an effort to resolve the situation. That letter requested, *inter alia*, that the parties discuss "[t]he government's position on the *Brady* issues outlined in our February 20, 2025 letter and if we can expect access to the materials requested in that letter." The government responded by email, and the parties exchanged emails in a further effort to resolve the issue. Although the emails suggested the parties were at an impasse, the government indicated it was available for a call on March 18, 2025 and requested that the defense postpone any motion until that call.

- **The March 18 conference call.** The parties held a conference call on March 18 on several issues, including the issues around disclosures of exculpatory evidence. The government's position remained unchanged, and it declined to provide any information about the statements in the summary letter or to confirm that it had, in fact, searched for exculpatory evidence of the type and in the locations identified in the defense's February 20 letter.

II. ARGUMENT

A. The government's approach wrongly conflates exculpatory evidence and impeachment material in order to adopt the later disclosure deadline for both.

Under Sixth Circuit precedent, exculpatory evidence must be produced "in time for its effective use at trial." *Bencs*, 28 F.3d at 561; *see also United States v. Presser*, 844 F.2d 1275 (6th Cir.1988) (agreeing that "the *Brady* doctrine is not violated if *Brady* material is disclosed in time for its 'effective' use at trial").

Both *Bencs* and *Presser* dealt with impeachment material, a distinct subset of exculpatory evidence. In *Bencs*, the defendant challenged "the government's failure to respond to a pretrial discovery request by producing memoranda of interviews" with two witnesses who testified at trial. *Id*. at 560. One witness's memoranda was produced two days before trial; the other, during trial but before the witness's

5

testimony. *Id.* Each of the memoranda "contained statements by both witnesses to the effect that Bencs was not involved in drug dealing, inconsistent with the witnesses' trial testimony." *Id.* In addition, one witness's memorandum contained information potentially relevant to the government's analysis supporting its tax-evasion charge. *Id.* Finally, Bencs complained that a memorandum of interview and grand-jury testimony of another witness "were not produced until shortly before trial." *Id.*

Relying on *Presser*, the *Bencs* court affirmed the convictions, stating:

> Any prejudice the defendant may suffer as a result of disclosure of the impeachment evidence during trial can be *eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it*.

*Bencs*, 28 F.3d at 560 (*quoting Presser*, 844 F.2d at 1283-84 (emphasis in original, added by *Bencs*)). In *Presser,* the government appealed a pretrial order requiring disclosure of impeachment material. In reversing the trial court's order, the court held "so long as the defendant is given impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id.* at 1283.

### 1. For it to be effectively used, exculpatory evidence must be disclosed promptly—not later as if it were impeachment material.

Together, *Bencs* and *Presser* stand for a simple proposition: so long as a defendant receives impeachment material before a witness's testimony, effective use can be made. Neither case, and no other case, stands for the fundamentally different proposition the government implicitly advances here: because impeachment material is a subset of exculpatory evidence, production of exculpatory evidence may be delayed as though it were simply impeachment material (or, alternatively, when exculpatory

6

evidence is found in a witness statement, that fact renders it impeachment material and permits the government to disclose it later under the impeachment-material timing protocol). Neither proposition is correct. Because the timing of production matters greatly when the information is exculpatory evidence as opposed to impeachment material, the deadline for doing so differs.

For example, assume the government charged a defendant with bank robbery. As part of its proof, the government plans to call a witness to testify that he saw the defendant driving away from the bank in a green Ford F150. In the witness's initial interview, however, he told investigating agents that the defendant was driving a *red* Ford F150. The contradictions in the witness's statements go directly to his credibility and must be produced to the defendant. But because those contradictions can be used effectively so long as the defendant receives them before the witness testifies, production closer to trial comports with the effective-use standard.

By contrast, assume that instead of a prior inconsistent statement about the color of the getaway vehicle, the evidence was a statement taken from an incarcerated individual who states that his cellmate (jailed on a separate offense) confessed to him that he alone was responsible for the robbery and laughed about the fact that the defendant was charged with a crime the cellmate committed. This evidence is exculpatory and contained in an interview memorandum. But that does not make it "impeachment" evidence—it is favorable and material to the defendant, and the government must promptly disclose it upon discovery. Indeed, absent some other testimony the incarcerated individual might offer, the government likely would not call him as

a witness at trial, and therefore there would be no "impeachment." But just because the defendant will not need to attack the individual's credibility does not mean the evidence is not exculpatory. It simply means it is not impeachment material. In fact, the evidence is important *Brady* material that a defendant could make affirmative use of and is entitled to receive.

But if the government waits until just before (or during) trial to turn it over under an impeachment-material disclosure schedule, or never turn it over if the witness is not called, the defendant cannot effectively use the evidence. At a minimum, he would need a continuance to attempt to locate, interview, and, if necessary, subpoena the witness. And he would need to integrate such information into his broader theory of defense. At best, that continuance would result in inconvenience and expense for no legitimate reason. At worst, the delayed disclosure may impair the defendant's ability to use the evidence at all.

> **2. The local rules and DOJ's own guidelines recognize the different timing-of-disclosure requirements for exculpatory versus impeachment evidence.**

To resolve production timing in the "effective use" context, LCrR 16.01 distinguishes between exculpatory evidence and impeachment material. Under that rule, exculpatory evidence "must be disclosed reasonably promptly upon discovering it." LCrR 16.01(a)(3)(A). By contrast, impeachment material "must be disclosed within a reasonable time before trial to allow the trial to proceed efficiently." *Id.* (a)(3)(B).

Even the government's own internal policies recognize this key distinction. The Justice Manual's approach aligns with the local rules regarding timing of production for exculpatory and impeachment evidence. Just like the LCrR 16.01, the Justice

8

Manual distinguishes impeachment material when considering the timing of production. It employs the exact language in the local rule regarding the timing for disclosure of exculpatory evidence: "reasonably promptly after it is discovered." JM § 9-5.001.D.1. And just like the local rule, the Justice Manual provides that such information "will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently." JM § 9-5.001.D.2.[1]

### B. The Government's refusal to provide the information contained in defendant's specific requests—or certify that none exists—runs contrary to its obligation.

As noted above, the defense's February 20 letter identified 22 categories of exculpatory evidence. A defendant is not obligated to make these kinds of specific requests. *See United States v. Agurs*, 427 U.S. 97, 110 (1976) ("there are situations where evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request"). But a defendant is entitled to present the government with specific requests for information and, "when a prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *Id.* at 106. Instead, "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality

---

[1] The Justice Manual "provides internal DOJ guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigation prerogatives of DOJ." JM § 1-2.00. Here, defendant cites the Justice Manual merely to highlight further that the different timing for production of exculpatory evidence versus impeachment material is long-established and uncontroversial.

9

exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *Id*.

The government has refused to either furnish the information requested or submit the issue to the Court for *in camera* review. Nor has the government been willing to certify that no evidence exists in any of the categories sought by the defendant. Instead, absent this Court's intervention, it appears the government plans simply to wait to produce all *Brady* material—whether it be exculpatory evidence or impeachment material—together at the last possible moment. Because such an approach contravenes *Brady*, the local rules, and DOJ's own policies, the Court should prevent that outcome and order the government to either produce the exculpatory evidence in its possession or certify that it has adequately searched and has none.

**C. The root of this disagreement lies at government's unexplained refusal to follow the approach it used in a recent similar case.**

Ironically, these issues would not be before the Court had the government simply followed the same approach it recently followed in a very similar healthcare-fraud case. In *United States v. Alshalabi, et al.*, No. 3:21-cr-00171 (M.D. Tenn.), the government provided the defendants access to interview memoranda and grand-jury transcripts months in advance of trial. While the government is not obligated to take that approach, there are logical reasons for doing so. Providing such access avoids time spent litigating disagreements about precise categories of exculpatory evidence, eliminates the need for the government to review each memorandum, transcript, or other material for information that might be deemed *Brady* in order to determine whether disclosure was required, and avoids the need to potentially prepare those

10

materials for *in camera* review. It also obviates the government's obligation to certify that it has disclosed all *Brady* material and mitigates the risk that a defendant might later successfully argue that *Brady* material was withheld. For these reasons, many prosecutors in other districts make the same choice, opting simply to make interview memoranda and grand-jury transcripts available well in advance of trial.

But to be clear, it is the government's prerogative to decline to do so. When that choice is made, however, the government takes on all of the obligations and risks listed above. Here, the same prosecution team weighed the risks and benefits of disclosure in a prior similar case and decided disclosure was appropriate. That shows that they understand the feasibility of such an approach. If they choose to take a different course here, they should not be heard to complain about the burdens and risks that come with that choice.

### D. As an independent matter, the "summary letter" is facially deficient and must be supplemented.

The issues outlined above relate to the government's general obligations and, if the requested relief is granted, would resolve all related issues. But independently of the broader failures, the government's specific disclosure—the anonymized, partial summary—is deficient on its face. It provides essentially no usable information, omitting who made the statement, when, where, under what circumstances, and what was the full statement or context. The government offers no justification for this approach, which is also at odds with its approach in yet another recent case in which the witness identities were provided. Nor does the government explain how anyone could make "effective use" of such a summary. Because no justification or explanation

11

exists, the Court should, independent of any other relief provided, order the government to supplement the disclosure with appropriate information.

## III. CONCLUSION

For the foregoing reasons, the Court should order the government to (1) provide all required information under the Court's prior order, the local rules, and *Brady* and its progeny within ten days, (2) confirm that it has done so after searching in the specific locations, and for the specific types of evidence, described the defense's February 20, 2025 letter, and (3) provide appropriate details to supplement its inadequate disclosure to date, including but not limited to the full statement the witness provided, the witness's identity and last known contact information, when the statement was made, and to whom.

<u>CERTIFICATION UNDER LCrR 12.01</u>

Counsel certifies that, as described in Part I.B. *supra*, he conferred with opposing counsel in a good-faith effort to resolve by agreement the subject matter in this motion, but those efforts were unsuccessful.

Respectfully submitted.

Dated: <u>March 24, 2025</u>

*s/ Ty E. Howard*
Ty E. Howard (No. 26132)
Bradley Arant Boult Cummings LLP
ONE 22 ONE
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582
thoward@bradley.com

## CERTIFICATE OF SERVICE

      I hereby certify that on March 24, 2025, a copy of the foregoing document was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon all counsel as follows:

Sarah K. Bogni
Robert S. Levine
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN 37203


                                            s/ *Ty E. Howard*
                                            Ty E. Howard